Thank you, Your Honor, and good morning. May it please the Court, I'm Elizabeth Newman, representing Mr. Ohonme. Your Honor, when the government is seeking a sentencing enhancement, it bears the burden of supplying information with sufficient and de-showed reliability to support the probable accuracy of that information. What does that mean? Is hearsay good enough? Occasionally hearsay, yes, hearsay can be good enough. Under what circumstances? If the hearsay, for example, the Court has found hearsay information good enough when the declarant is inherently, well, when the person reporting the hearsay is inherently reliable. For example, there was one case in which it was an affidavit of counsel, so that was sworn, but it was presented as part of the PSR or related in the PSR. But the underlying information also has to be disclosed and up to challenge, and that's really the key. What the Court has said is that there are some sources of information that may be inherently reliable, like computerized databases that show rap sheets. But even then, the underlying information does have to be disclosed so the defense can find it. If I'm the victim of a burglar and I tell a probation officer somebody stole a thousand bucks out of my house, and the probation officer repeats that in a probation report, does that have any indicia of reliability such that a judge can take it under consideration? It could, Your Honor. It could. Well, it could. Under what circumstances? What's the five-part test? The five-part test, Your Honor? Well, I'm just being facetious, but I mean, what's could mean? You thought you missed the five-part test. Yes. You had a look on your face like, let me out of here. What is, under what circumstances, what does could mean? I'm sorry, Your Honor? You say it could be. Yes. Well, when could it be and when could it not be? It depends on the type of information it is, Your Honor. I think in the hypothetical that the Court has proposed, where the PS, the case statement or the victim says I lost a thousand dollars. Or a hundred thousand. Or a hundred thousand. I think courts routinely do consider that information reliable, although they do occasionally – I mean, I've seen cases in which they ask for, you know, a more detailed breakdown. For example, there was one case in which the – one of the losses was attorney's fees without any further description of what those attorney's fees really consisted of, what the billable rate was, how many hours the attorney actually spent on it. And the Court remanded so that the information could be more particularly described. It said that that was not sufficient. How is that different from what we have here? What we have here, Your Honor, is just a conclusory number that doesn't have – that's – in which the underlying information isn't disclosed at all. For example, in the first – Well, maybe I'm confused. I'm sorry. I thought that the number that we're dealing with that determined the sentence came from postal service spreadsheets that was information gathered from the victims. Right. But that information wasn't disclosed in – otherwise in any way. Well, then I'm confused, too, because I read the record and I thought I heard people saying in the record that it had been turned over – all this had been turned over to the defense in discovery. Yes, but it wasn't in front of the district court. The district court had to do its findings. But you had it. You had it. The defense had it, yes. But it's – Why didn't you give it to the district court? The district court – because it's not our burden. It's not the defense's burden to show – Why didn't the government give it to the district court? That's up to the government to answer. I plan to. Your Honor. I have a question there. Yes. The victim's impact statement on the PSA says that the amounts fraudulently charged to the credit cards was $160,336, which is the amount that was charged. Now, was there a record of the charges against the credit card? There was – there were exhibits introduced and admitted at trial, Your Honor, but only as to the three victims whose cases were presented at trial. That was the $70,000. You know, normally – $60,000, $70,000, something like that. If you had the credit card charges, that's all it would be. It would be a slam-dunk deal. And so what – are you saying in the victim's impact statement that there was no record of the charges against the credit card that was submitted? Not to support that amount, Your Honor. And furthermore, I would respect – Well, what amount did it support? Well, according to the government, it supported $63,000 more or less. According to Mr. Banjo, who was defense counsel at trial, it supported, at least based on the discovery, an amount of $71,000, which is a higher enhancement. Well, that was an agreeable amount that – if there was a plea, correct? Correct. Correct. So – but it wasn't $160,000. No. So what you're saying, if I get your position – Yes. – is that the credit card charges were not presented to the district judge. That's right. It's the underlying – They were presented to you, but they weren't presented to the district judge. Correct. And then the case agent, wasn't there testimony from somebody that the loss was $160,000, according to spreadsheets? The probation officer came into court and said that this was – she said that this was the result of her calculations. But in order for there to be some meaningful opportunity for the defense to contest what the government is saying, the underlying information has to be disclosed. But you had that. That's like a summary. You had the underlying information. But the district court did not. And it's the district court that has to make the factual findings, and that's why I would respectfully direct the court to what the court said in Garcia-Sanchez. There, the government's backup argument as to the amounts of weekly drug transactions that would support an enhancement for drug quantity were, even if we didn't really support it properly at sentencing, the trial testimony supported it. I have a hypothetical for you. Suppose in a sentencing proceeding, a probation officer takes the stand and describes the research that she did and said, I've calculated the loss amount as $160,000. And the government lawyer sits down and the defense attorney says, I have no questions. What would we make of that? Oh, you'd make a plain error case out of it, Your Honor, for one thing. But I think that that would also be – I'm not saying that there wasn't an objection going into sentencing or whatever. Right. But what would we make of the fact that the probation officer took the stand, testified as to loss amount, and the defense chose to ask no questions? I would hope that the court would make of it that that was a conclusory statement based on unrevealed information, just as in Jordan, where there was a similar kind of conclusory statement based on unrevealed supporting information. There's a whole list of cases in which the court has said that. And returning to Garcia-Sanchez, for a moment, Your Honors, the government's backup argument, which was that the trial testimony – in this case, it would be – analog would be the trial exhibits – supported the loss. Yeah. They don't. You're right. I'm sorry? They don't. You're right. Yeah. The jury didn't find that to be the case. Not only that, Your Honor. In Garcia-Sanchez, this Court said that it was up to the district court to find facts at sentencing, and it wasn't the province of the appellate court to make any sort of findings like that. So you have the information that you say should have been turned over to the district court to judge. Not necessarily, Your Honor. I mean, it's really hard to say based on – Well, you got a package of something that supposedly supported this figure in these numbers, right? Well – What are you asking us to do? Send it back and telling Bill Keller, take a look at the stuff? I'm – yes. Take – well, take a look at the stuff on a closed record, since the government had a chance already to support the – Does your client really want to be re-sentenced? Yes, he really does. And have you advised him of the possibility that his sentence could be increased? Yes. That the sentences, for example, could be made consecutive? That the district judge could say, you know, I was really in a good mood the last time. Now I'm not in a good mood. Now that I take a look at this stuff – He's aware of the possibilities, Your Honor. Mr. O'Holmey, I mean. You have a little bit of time. You want to save it for rebuttal? Yes. Thank you very much. Thanks for coming in today. I appreciate it. Thank you, Your Honor. We'll hear from the government at this time. We had one of these cases yesterday where somebody got off easy and decided to fight and ended up in the bucket. But it's his choice. May it please the Court. Vince Farhat for the United States. The judgment of the district court should be affirmed. The loss finding in this case was not clearly erroneous. Did you file a sentencing memorandum in this case? I'm sorry, Your Honor? Did you file a sentencing memorandum in this case? Yes, Your Honor. It's included in the memorandum. Did you support with summaries and spreadsheets the loss amount? The sentencing memorandum. Can I have a yes or no to start your answer? No. The sentencing memorandum did not. Did not. Go ahead. The sentencing memorandum referenced the PSR, and at the sentencing hearing, the probation officer explained to the court the process that the probation officer went through. The PSR was not based on unrevealed information. But why didn't you turn it over to the court? I mean, Bill Keller is sitting there saying, you want to go out and squabble around with the Ninth Circuit on this, and then all of a sudden out of nowhere he says, well, I find this is the amount. Why didn't you just hand it to him? The government did offer to lodge the records with the court. Ultimately, the court decided to make the finding because the court believed that on the record before the court. What do you mean the government offered to lodge it? The government did offer at one point during the hearing if the court didn't see it. Was turned down? Well, you said if the court wishes to see it. When you say we offer, I mean, I don't know what's going on here. Here it is. You've got this big squabble. You know it's going to come up to the Ninth Circuit. You know we're a dangerous court with different panels. All you have to do is say we offer the documents. I can't understand why that didn't happen. Ultimately, the government's position then, as it is now, was that the district court's level of inquiry was more than enough given the relatively simple loss calculation in this case and the defendant's failure to articulate any specific grounds for why the loss calculation was wrong. It's not their burden. Yes. But the defense offered. It is absolutely not their burden. There is absolutely no obligation to do anything, especially when they think you haven't met yours. Correct? It is the government's burden always. Yes, Your Honor. And ultimately, the loss calculation in this case. And we spent all of this time in front of Judge Keller and all of this time here because the government, quite frankly, and you were the assistant, weren't you? Yes, Your Honor. You didn't do your job. For sentencing. You did not do your job. The government believes. Am I wrong about that? No, the government believes that it did do its job at the sentencing hearing. Did the jury find the amount? The jury found guilt on the three counts that went to trial. The answer to my colleague's question is no, isn't it? No. And the. Isn't it? Yes, that is correct. Okay. And at trial, because the loss calculation. You know, you've got two people up here who used to do what Judge Keller used to do, and we both expected our assistants to turn absolutely square corners. You don't just represent any client from anywhere. You represent the sovereign, the people of the United States of America, and we expect you to turn straight corners. We also expect you to do a good job. And in my judgment, you didn't. Now, what we do with that, I don't know. But if you'd filed a sentencing memorandum, if you'd put that probation officer or the postal inspector on the stand with a spreadsheet, we would not be here. And that's not because of what Judge Keller did or didn't do or what we have not done or not done. It's what you didn't do. Okay? And, Your Honor, ultimately, Judge Keller, the district court did not commit clear error in the government's view. There was no surprise at sentencing. The government had produced to the defendant all the documents used to prepare the PSR during discovery and at trial. The probation officer in this case also took steps to confirm the accuracy of the loss calculation by speaking with representatives from the victim credit card companies. Did the probation officer, when she said the loss amount was this, was she sworn as a witness or was she just acting as an advisor? No, Your Honor. She was not sworn. She was speaking, addressing the court, but she was not sworn at that time. But based on the information that was disclosed to the defense, together with the steps taken by the probation officer to confirm the loss calculation, the PSR, we believe, had more than sufficient indicia of reliability to support its probable accuracy. This was a case where once the defendant was identified as the person who took over the credit card account, all the losses attributed to that credit card account were attributed to the defendant. This was not a conspiracy. There was a single defendant in this case. All the losses were attributed to this defendant. And the loss calculation was very simple. The ATM photographs and the surveillance photos and the phone records identified the defendant as having taken over the account, and all the losses thereafter followed and were attributable to the defendant. One other question. In the PSS report, did the defense counsel make any objection to the report as submitted, which had, as I read, over $160,000 as the loss? Was that questioned by the defense counsel? The defense counsel, in his papers and at the hearings, just made a fairly general objection. Was there an objection made to the PSA, PSR? A general objection, yes, there was. To that section, to the amount? To the loss amount, yes. Okay. And the objection, in that objection, the defense never articulated the specific grounds for why the loss calculation was wrong. They never disputed the actual numbers or claimed that someone else made the charges. The only argument that was made was a legal argument regarding the application of a guideline provision that would have credited him for the atescadero amount that was paid off. But that was a legal argument. There were some plea negotiations, weren't there? There were plea negotiations. And there was a draft plea agreement, wasn't there? Yes, Your Honor. It's not on the record, but there was a draft plea agreement. And that fixed the amount for that purpose? And it was in the ---- Did it have a yes or no? It did fix the amount, and it also made clear that the restitution amount could change over time. I'm not talking about the restitution amount. Didn't the draft plea agreement fix the amount at, like, $70,000? And it was, yes, Your Honor. Was that a compromise amount? Well, it's not on the record, but, yes, it was. And it was done very early in the post-indictment phase of the case, before the trial, before the further investigation was done during the case, and many ---- a long time before the sentencing of the case. One of the cases that you rely on is the Brigham case. How does that help you? Your Honor, that case helps because in Brigham, the defendant objected to the sentence before the court was a PSR and another summary document that was prepared by the government. And the defendant in that case, a restaurant owner, objected to the loss amount in a very general way and said that the underlying restaurant records would support his objection, but did not point to them, did not analyze them, did not proffer them, made no argument with respect to those documents. And ultimately, the court in Brigham declined to comb through the record on the defendant's behalf. Well, you know, I was on the panel in Brigham, and that was a plain error case. And this is a clearly erroneous case. Yes, and if you re-judge Kleinfeld's opinion, I don't think it helps you at all. The government ---- It's a plain error case, which means they didn't object. The government cited it for the proposition generally that the court, in order to resolve the dispute, has to have a dispute in front of it. In this case, there was no dispute in front of the court except the general objection to the amount of loss. There was no ---- the defense made no effort to articulate anything that the court could get its arms around to be able to resolve. On these facts, the defense, the district court's inquiry was sufficient. It was a simple loss calculation. The defendant failed to articulate any specific grounds as to why the calculation was wrong, and the court engaged in a colloquy with the government and the probation officer to ensure that the PSR rested upon a record of sufficient judicial reliability that would support its probable accuracy. Your Honors, if I could take a moment. In the event that the court does remand, the government should not be barred from presenting additional evidence on remand. The general practice is to remand for resentencing on an open record. Although there are some narrow exceptions, the general rule is that it furthers the goal of predictability and consistency in sentencing. So you're going to go for a bigger sentence on remand? Is that what you're telling us? You're firing a shot across the defendant's bowel? No, Your Honor. The defendant's already told you. The defendant doesn't care. The government is merely commenting that if the case is remanded, it should be on an open record so the government can lodge with the court the documents that supported the government's view of the loss amount. None of the exceptions cited by the defense in the Becerra case or the Ponce case control here. And if there is a remand, then it should be remanded on an open record to ensure that Judge Keller has a fulsome record for which to resentence the defendant. But they've not done your job before. You now want another opportunity to do it. Is that right? The government, if the matter is remanded, the government would lodge the records and file the records and follow the court's remand instructions. But on this record, the court of the government does believe that Judge Keller did not clearly err in finding the loss amount. Okay. Thank you for your argument. Thank you, Your Honor. We have a little time for rebuttal. Just a suggestion, counsel. Next time you have a meeting of prosecutors in the central district office, you might want to play the tape of this argument for teaching purposes. Yes, Your Honor. Thanks for coming in today. Counsel? Thank you, Your Honor. I'd like to respond to the government's assertion that the evidence showed that when Mr. Ohome took over credit card accounts, all losses were attributable to him, and just point out that there wasn't any evidence at all about the credit cards that weren't the subject of the trial. So there's really no way to know whether this is a simple loss calculation, a complex one, which charges actually are attributable to him and which ones are not. I know you weren't the counsel at sentencing. No, Your Honor. But didn't the defense attorney below Mr. Bonneau? Banjo. Banjo, excuse me. Didn't he at one point agree that the loss amount was $70,000? He did, but then he said he didn't in the same range. Oh, I know he backtracked. Yeah. Didn't he at one point say that it was $70,000? He did. I mean, he certainly made that statement. What would have been the sentencing range if the loss amount were $70,000? It would have been a low end, a high end of 6 months less and a low end of 12 months less. But, Your Honor, given Mr. Banjo's odd approach to English, which the Court may have noticed if it's read through the not only the sentencing transcript, but particularly the trial where he's occasionally absolutely unintelligible, it seems that what he was saying, he was using his verb tenses in a way that weren't very common. He was saying, yes, I did agree to that. But then he says, no, I really don't agree to that. It's their burden to prove it. Okay. Okay? Thank you very much, Your Honor. All right. The case just argued will be submitted for decision, and we'll proceed to the next
judges: Trott, Hawkins, Bright